STEIN et al. v. FLEISCHMANN CO. et al.

(District Court, S. D. New York. December 7, 1916.)

1. DOMICILE ⬦4(1)—LOSS OF DOMICILE—RESIDENCE ABROAD.

A domicile acquired in a state by a naturalized citizen does not persist after the citizen has given it up and is permanently residing abroad.

[Ed. Note.—For other cases, see Domicile, Cent. Dig. §§ 5-8, 10-23; Dec. Dig. ⬦4(1).]

2. COURTS ⬦307(1)—JURISDICTION—DIVERSITY OF CITIZENSHIP—CITIZENS RESIDING ABROAD.

A naturalized citizen of the United States, who has abandoned his domicile in any state in which he resided, is not a citizen of that state under the Fourteenth Amendment, and therefore cannot sue in the federal courts on the ground of diversity of citizenship.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 850, 851, 854; Dec. Dig. ⬦307(1).]

3. COURTS ⬦321—JURISDICTION—ALIENATION—REPATRIATION.

Act March 2, 1907, c. 2534, § 2, 34 Stat. 1228 (Comp. St. 1913, § 3959), providing that, whenever any naturalized citizen shall have resided for two years in the country from which he came, or for five years in any other country, it shall be presumed that he has ceased to be a citizen, but that this presumption may be overcome on the presentation of satisfactory evidence to a diplomatic or consular officer, does not make the presumption of repatriation conclusive, in the absence of a showing before the dip-

lomatic or consular officer, in the case of a naturalized Austrian, in view of article 4 of the treaty with Austria (17 Stat. 836), which provides that an emigrant shall not, on his return to his original country, be constrained to resume his former citizenship, but if he shall of his own accord reacquire it, and renounce the citizenship obtained by naturalization, renunciation is allowable, and therefore such naturalized citizen cannot sue as an alien in the federal courts, where it is shown that he has not reacquired his Austrian citizenship, though he has resided in Austria more than two years, and has not satisfied a diplomatic or consular officer that he retained his American citizenship.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 845, 847–849; Dec. Dig. ☞321.]

In Equity. Suit by Theodore G. Stein and others against the Fleischmann Company and others. On motion for injunction. Bill dismissed sua sponte, for lack of jurisdiction over the subject-matter.

This is a motion for an injunction against the defendants' disclosing certain trade secrets alleged to have come into their possession confidentially. The three plaintiffs are alleged to be the joint owners of the secrets, which concern the manufacture of yeast, and the jurisdiction of this court depends upon diverse citizenship. The plaintiffs Cukr and Goldschmidt are alleged to be subjects of the emperor of Austria residing at Taikowitz, in the province of Moravia, and the plaintiff Stein to be a citizen of the United States residing in Vienna. Of the defendants, the Fleischmann Company is alleged to be an Ohio corporation, and the individual defendants, Fleischmann and Zeckendorf, are alleged to be citizens of New York. On return of the order to show cause the defendants submitted a special answer raising certain points of jurisdiction. The first was that the court had no jurisdiction, because there were insufficient allegations of the diversity of citizenship; second, that the value of the matter in controversy did not appear in the complaint; third, that the Fleischmann Company, being an Ohio corporation, was not a resident of New York, and that the court was without jurisdiction; fourth, that Fleischmann was in fact a citizen of the state of Ohio, and that the court was without jurisdiction over his person; fifth, that the plaintiff Stein is a citizen of New York, and that the court was therefore without jurisdiction against the defendant Zeckendorf. In support of the jurisdiction, Stein filed an affidavit saying that on April 29, 1891, he was naturalized as an American citizen in the New York Supreme Court, and lived in the city continuously until June, 1909, after which time he resided for one year in Paris, and for over five years in Germany, until September, 1915. At that time he went to Vienna, where he has since resided and is now in business; that he intends definitely and permanently to live abroad and conduct his business there, and has never had a residence in New York since leaving here in 1909. Stein's domicile of origin is Austria.

James J. Kennedy, of New York City, for the motion.
Claude A. Thompson, of New York City, opposed.

LEARNED HAND, District Judge (after stating the facts as above). [1, 2] It is clear that Stein is not a citizen of New York, as the defendants assert, as he has given up his domicile, which being acquired, and not a domicile of origin, does not persist. Though he may be a naturalized citizen of the United States, he is not domiciled in any state, and he is not a citizen of any state, under the Fourteenth Amendment. To sue in a federal District Court, it is not enough to be a citizen of the United States. One must be a citizen of a state. New Orleans v. Winter, 1 Wheat. 91, 4 L. Ed. 44; Hoe v. Jamieson, 166

U. S. 395, 17 Sup. Ct. 596, 41 L. Ed. 1049; Bankers Trust Co. v. Texas & Pac. Ry., 241 U. S. 295, 309, 36 Sup. Ct. 569, 60 L. Ed. 1010.

[3] To meet this difficulty Stein in his brief urges, despite the allegations to the contrary in the bill, that he is no longer a citizen of the United States, because he has resided for more than five years abroad. Section 2 of chapter 2534 of 1907, 34 Stat. 1228, provides that, when a naturalized American citizen shall have resided for five years in any foreign state, or two years in the state from which he came, he shall be presumed to have ceased to be an American citizen. This, however, is only a presumption, and it may be met by satisfactory evidence given to a diplomatic or consular officer of the United States.

This act was considered in United States ex rel. Anderson v. Howe (D. C.) 231 Fed. 546, a case, however, in which the treaty with the relator's country of origin, Sweden, was such that a renewal of residence in Sweden of itself repatriated the naturalized American citizen. As the case came before the court, the relator's residence in Sweden had to be accepted as a fact. Any language regarding the act of 1907 was therefore obiter. In the case at bar, however, article 4 of the treaty with Austria is as follows:

"The emigrant from the one state, who, according to article 1 is to be held as a citizen of the other state, shall not, on his return to his original country, be constrained to resume his former citizenship; yet if he shall of his own accord reacquire it, and renounce the citizenship obtained by naturalization, such a renunciation is allowable, and no fixed period of residence shall be required for the recognition of his recovery of citizenship in his original country."

This treaty secures to a naturalized American of Austrian birth the right to return to Austria without resuming his Austrian citizenship, which he can resume only by "reacquiring" it under the laws of Austria. It is true that, if he wishes the protection of the United States after two years in Austria or five years elsewhere, he must satisfy the diplomatic or consular officer of the United States before whom he goes that he has not reacquired his citizenship; but the provision of 1907, so construed, would not affect his status itself. The plaintiff goes further, and insists that for all purposes he must be taken to have renounced his American citizenship unless he satisfies a diplomatic or consular officer that he has not. Since the proviso only refers to such officers, it is quite clear that no court could under that construction examine the facts, and the necessary result would be to repatriate all such citizens unless they obtain a decision from such an officer. Of course, that may have been the intention of the statute; but it seems to me that one should not assume so when the result is to modify existing treaties.

There are, in general, two types of such treaties, one in which a naturalized citizen of the United States, if he returns and takes up residence in his country of origin, animo manendi repatriates himself. In these it is common to provide a presumptive period of two years from which domiciliary intent will be presumed. Such are the treaties with the North German Union, Sweden, Denmark, Ecquador, Hesse, Honduras, Portugal, and perhaps others. On the other side are those powers

which provide, as Austria, that a citizen must renounce by form of law his acquired citizenship. Such are the treaties with Baden, Bavaria by protocol, Württemberg by protocol, and perhaps others. The first form is the more common, and it is obvious why the act of 1907 was passed, when we see that the test which our own diplomatic officers were to apply corresponded with the test in the treaty. They were to determine pro hac vice whether the presumed intent not to return to America created under the treaties by two years' residence was in fact rebutted. Yet I can hardly think that Congress meant their decision to be conclusive upon the putative citizen for all times and at all places.

In the case of the second class of cases, domiciliary intent has nothing to do with it, but the citizen can repatriate himself by form of law. See especially the protocols of Bavaria and Württemberg. It would be even more remarkable if Congress meant by a general statute like the act of 1907 to abrogate pro tanto such treaties as these by providing for repatriation if the putative citizen could not satisfy the officer that he had not so reacquired his citizenship. In such cases we should have, not only the singular fact that the decisions of such officers were conclusive elsewhere, but their decisions would rest upon matters of record, and might deprive a citizen of treaty rights. While all this may be within the power of Congress, it seems to me most unlikely to have been within its intent.

Mackenzie v. Hare, 239 U. S. 299, 36 Sup. Ct. 106, 60 L. Ed. 297, is not in point, I think. There were no provisions in the act which operated unreasonably if the words were given their usual meaning. On the contrary, the first sentence of the section, which was the only part there in question, was declaratory of the common law.

I think that there is therefore no jurisdiction, since on the record Stein is a citizen of the United States, as he alleges. The bill will be dismissed, but the point will be certified to the Supreme Court, if the parties wish. The record should in that case be supplemented by a concession that Stein's country of origin was Austria, which, though the fact, does not appear in the record as it stands.

Bill dismissed sua sponte, for lack of jurisdiction over the subject-matter.